No. 47,150

Yellow Freight System, Inc., *Appellee*, v. Kansas Commission
on Civil Rights, *Appellant*.

(519 P. 2d 1092)

Opinion filed March 2, 1974.

*David L. Ryan*, of Topeka, argued the cause, and *Vern Miller*, attorney general, and *Jerry Shelor*, assistant attorney general, were with him on the brief for the appellants.

*Robert W. McKinley, Jr.*, of Swanson, Midgley, Eager, Gangwere & Thurlo, of Kansas City, Missouri, argued the cause, and *Richard K. Andrews*, of the same firm, and *Paul Armstrong*, of Columbus, were with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from an order granting a permanent injunction in an action filed by Yellow Freight System, Inc., against the Kansas Commission on Civil Rights. The action is collateral to an action by the Kansas Commission on Civil Rights on the complaints of Bobby G. Ferrell, Wendell Phillips, and John W. Allen, charging employment discrimination by Yellow Freight System, Inc. Hereafter, the Kansas Commission on Civil Rights will be referred to as the commission; Ferrell, Phillips, and Allen, as complainants; and Yellow Freight System, Inc., as respondent.

The issue on appeal is the authority of the commission to investigate and issue a subpoena after a finding of probable cause for crediting complaints of discrimination, but prior to issuing notice of a hearing on said complaints.

On November 21, 1970, the complaint of Ferrell was served upon respondent in Baxter Springs, Kansas, charging racial discrimination in its employee "layoff" practices in violation of the Kansas Acts Against Discrimination. (K. S. A. 44-1001, *et seq.*) On December 17, 1970, the complaints of Phillips and Allen were served on respondent alleging similar acts of racial discrimination. The complaints were consolidated and investigated by a field representative of the commission and an investigating commissioner. On March 21, 1971, a finding of probable cause for crediting said complaints was made by the investigating commissioner and respondent was notified thereof. Conciliation was attempted at several meetings but was not successful. On March 9, 1972, the instant subpoena was served on respondent's manager of road operations in Baxter Springs ordering the production of employment histories of all over-the-road drivers hired by that terminal since January 1, 1960, for examination by the commission. On March 20, 1972, respondent filed this action for a writ of mandamus, prohibition, or, alternately, injunction in the district court of Cherokee County. The respondent alleges the subpoena issued by the commission exceeded its statutory authority.

A hearing was held on respondent's motion and the district court granted respondent a permanent injunction on November 28, 1972. The court interpreted the complaint procedure outlined by K. S. A. 1971 Supp. 44-1005 as follows:

". . . [A]fter a finding of probable cause has been made by the Commission under this statute, that the Commission has no further power to investigate or to subpoena documents except after the statutory notice has been given to the employer for a hearing pursuant to the plain and expressed terms of the statute."

On appeal, the commission contends the district court erred in concluding the statutes limit the commission's use of its subpoena power to preliminary investigations to determine probable cause, and to subpoenaing witnesses and documents in connection with hearings before the commission. The commission further contends it was error to enjoin its subpoena on the ground it was not issued in exercise of one of these functions. The question on appeal, then, is whether the complaint procedure outlined in K. S. A. 1971

Supp. 44-1005 limits the commission's investigatory and subpoena powers authorized by K. S. A. 1971 Supp. 44-1004 (4) and (5).

The authority under which the commission was investigating the respondent is provided in K. S. A. 1971 Supp. 44-1004:

"The commission shall have the following functions, powers and duties:

· · · · · · · · · · · · · ·

"(4) To receive, initiate, investigate, and pass upon complaints alleging discrimination in employment and public accommodations because of race, religion, color, national origin or ancestry.

"(5) To hold hearings, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and in connection therewith, or in connection with the investigation to require the production for examination of any books or papers pertinent to the proceedings, where a complaint has been properly filed with the commission. . . ."

Subsection (5) has been amended to provide other tools of discovery. (K. S. A. 44-1004 [5].) The amendment was not in effect at the time the subpoena in question was issued, but respondent contends the amendment is an important indication of the limitations on the commission's power of subpoena intended by the 1971 statute. As amended, subsection (5) reads:

"(5) To subpoena witnesses, compel their appearance, require the production for examination of records, documents and other evidence or possible sources of evidence and to examine, record and copy such materials and take and record the testimony or statements of such persons. The commission may issue subpoenas to compel access to or the production of such materials, or the appearance of such persons, and may issue interrogatories to a respondent to the same extent and subject to the same limitations as would apply if the subpoena or interrogatories were issued or served in aid of a civil action in the district court. . . ."

Respondent contends the 1972 amendment is significant because it deletes the phrase "pertinent to the proceedings" which tied the exercise of the commission's power to investigate and issue subpoenas, to the complaint procedure in K. S. A. 1971 Supp. 44-1005. The complaint procedure provides for the preliminary investigation by the commission of complaints filed by individuals. It also provides for issuance of complaints by the commission on its own behalf after investigation shows a pattern or practice of discrimination by an employer. After a preliminary investigation by a commission field representative convinces the investigating commissioner there is probable cause to credit the charges of an individual complaint, or after the commission investigates and files its own complaint, the employer is notified and conciliation meetings may be held to attempt to eliminate the discriminatory prac-

tice. If conciliation fails or is not attempted the commission may or may not schedule a formal public hearing on the complaint. If a formal hearing is scheduled, the commission shall issue a subpoena on the application of a complainant or respondent for the attendance of any person, or the production for examination of any books, records or documents pertinent to the proceedings. The hearing may lead to an order enforceable by court procedure to cease and desist from such practice or a finding by the commission that there is no violation of the Act.

The district court has adopted respondent's interpretation, holding the complaint procedure authorizes investigations and the use of subpoenas in aid of investigation in three instances only: (1) To determine probable cause to credit an individual complaint; (2) as a preliminary requirement to filing a complaint by the commission; and (3) to obtain witnesses or documents for a formal hearing after setting a date for such hearing. The commission contends K. S. A. 1971 Supp. 44-1005, if it affects their powers of investigation and subpoena at all, merely adds to them by extending the subpoena power of the commission to complainants and respondents to secure witnesses and documents for hearings.

The State of New York has a similar act against discrimination and when presented with the same question the court held the commission's subpoena power was not limited to use in the particular procedures outlined for conduct of complaint proceedings, but could be used in general informal investigations to enable the commission to carry out all its statutorily assigned duties. (*Mtr. of Broido v. St. Comm. for Hum. Rgts.*, 40 N. Y. Misc. 2d 419, 243 N. Y. S. 2d 101.) The court said:

". . . It cannot be argued from the fact that a particular procedure was outlined . . . in relation to verified complaints filed with the commission by claimant . . . and that such procedure includes the subpoena power, that the subpoena power does not exist in connection with the power to investigate into matters before the commission as covered by the provisions of section 295 of the Law Against Discrimination. . . ." (p. 421.)

New York Executive Law 295 referred to by the court is similar to K. S. A. 1971 Supp. 44-1004 in that it assigns to the New York Commission in sections 9 and 10 thereof, the same duties provided for in sections 12 and 13 of the Kansas law, and both the New York and Kansas commissions are charged with, *inter alia,* making investigations of discrimination and reporting to the governor.

General tenets of administrative law recognize that an agency

charged with investigatory duties to ferret out violations of the law can issue subpoenas and make such investigations, even though no formal administrative hearing be pending. (*Brovelli v. Superior Court,* 56 Cal. 2d 524, 15 Cal. Rptr. 630, 364 P. 2d 462; *Fielder v. Berkeley Properties Co.,* 23 Cal. App. 3d 30, 99 Cal. Rptr. 791; *United States v. Morton Salt Co.,* 338 U. S. 632, 94 L. Ed. 401, 70 S. Ct. 357. If agencies charged with enforcement duties are to accomplish the tasks assigned them by legislative bodies, the following construction must be placed upon statutes granting administrative bodies subpoena powers:

". . . [T]he heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' . . . (*Brovelli v. Superior Court,* supra, p. 529.)

The investigative and reporting duties assigned to the commission, when considered in the light of the statute's general purposes, lead us to the conclusion that the legislature did not intend to limit the exercise of the commission's investigatory powers to the preliminary stages of the complaint procedure outlined in K. S. A. 1971 Supp. 44-1005. The commission must be free to investigate, which necessarily implies the use of its subpoena authority, if it is to carry out and give meaning to all the investigatory and reporting duties assigned it in K. S. A. 1971 Supp. 44-1004. The specific mention of subpoena power in connection with a scheduled formal hearing in K. S. A. 1971 Supp. 44-1005, cannot in any way be interpreted to limit the commission's power of subpoena. It is an extension of that power in aid of complainants and respondents. The district court's interpretation of the statutes is erroneous and the permanent injunction against the commission's subpoena is dissolved.

Respondent argues further in support of the injunction that it should be affirmed on the ground commission did not meet its burden of proving the records subpoenaed by them were relevant. This issue was not reached by the district court, but an appellee may support the judgment by any reason disclosed by the record. If the decision below is correct for any reason, it must be affirmed although the lower court relied upon a wrong ground or theory of the law. (*Tripp v. The Reliable Life Insurance Co.,* 210 Kan. 33,

499 P. 2d 1155; *Kirk v. H. G. P. Corporation, Inc.*, 208 Kan. 777, 494 P. 2d 1087.)

The respondent's contention that the documents need to be pertinent to a formal hearing is already discredited since we have held the commission's power to investigate and to subpoena does not depend upon the pendency of a formal complaint proceeding or hearing.

The respondent further contends the commission is under a burden to prove the relevancy of the subpoenaed employment records to prove or disprove the specific acts of discrimination charged by the complainants, and the commission failed to meet that burden.

The weight of authority of administrative law refuses to apply the stringent relevancy requirements of subpoenas in aid of civil or criminal litigation to agency subpoenas. The test of relevancy we approve is set forth in *Brovelli*, supra, where it is held:

". . . [I]t requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant. (*United States v. Morton Salt Co., supra,* 338 U. S. 632, 651-654; *Oklahoma Press Pub. Co. v. Walling,* 327 U. S. 186, 202 et seq. [66 S. Ct. 494, 90 L. Ed. 614 166 A. L. R. 531].)" (p. 529.)

In this case, the subpoena on its face states it is in furtherance of the complaints of Ferrell, Phillips, and Allen against Yellow Freight System, Inc., a subject within the commission's statutory authority. The documents subpoenaed are employment records and are clearly described.

Respondent further contends the employment histories of drivers hired since 1960 are not pertinent to the question of whether complainants were discriminated against since "layoff" depends upon length of service or seniority of the employee and complainants were hired in 1968 and 1969. We do not know whether the employment records of the respondent from 1960 will disclose any criteria for arguing discrimination exists in "layoff" policies. The code of civil procedure provides upon application of one against whom a subpoena is issued the court may quash or modify a subpoena if it is unreasonable and oppressive. (K. S. A. 1973 Supp. 60-245 [*b*].) We believe there is a possibility of relevancy in the documents subpoenaed and in the absence of any showing that the subpoena is unreasonable or oppressive the statute should be liberally construed to permit inquiry. Enforcement of the subpoena

cannot be denied on the ground the documents are not pertinent to the proceeding.

The subpoena of documents in furtherance of these complaints should lead to one of two possible actions by the commission: either the scheduling of a formal hearing, or dismissal of the complaints. Continuing investigation without hearing or dismissal resulting is burdensome to respondent, does not accomplish the purpose of the statute, and does not give complainants the relief afforded by the Act. The intent of the legislature is that once the complaint procedure is commenced it should lead to a final administrative decision and end with either dismissal or an enforceable order.

The judgment is reversed.

FATZER, C. J., dissenting: This case is another illustration of the need for this state to adopt a uniform administrative procedure act. As I read the statutes involved, the enabling section vests in the commission various powers, one of which is the power to subpoena, and it imposes upon the commission certain duties. (K. S. A. 1971 Supp. 44-1004 as amended K. S. A. 44-1004.) However, those powers and duties are to be exercised by a commissioner, the commission, or members of its staff in accordance with the procedural section. (K. S. A. 1971 Supp. 44-1005 now K. S. A. 44-1005.) This section prescribes in detail the procedure to be followed in the resolution of complaints of discrimination. A reading of the section clearly reveals the Legislature contemplated a step by step procedure.

After a complaint is received and investigated, a determination must be made as to whether probable cause exists for crediting allegations of the complaint. If probable cause shall be found to exist, the commission must attempt to eliminate the discriminatory practice by conciliatory efforts. When conciliatory efforts fail the "said commissioner or the commission shall cause to be issued and served in the name of the commission, a written notice, together with a copy of such complaint, as the same may have been amended, requiring the person, employer . . . named in such complaint . . . to answer the charges of such complaint at a hearing before at least four (4) commissioners . . . at a time not less than ten (10) days after the service of said notice." As will be observed, there is nothing in the statute to support the statement in the majority opinion that, "If conciliation fails or is not attempted, the commission may or may not schedule a formal public hearing on

the complaint." In regard to the statutory hearing, the "complainant or respondent may apply to the commission for the issuance of a subpoena for the attendance of any person or the production or examination of any books . . . pertinent to the proceeding at the hearing." (K. S. A. 44-1005.)

The majority opinion is nothing less than a grant of unfettered authority to issue subpoenas for any employment records in the state in violation of the legislatively mandated procedural section. Adherence to orderly procedure is something the instant commission has apparently forgotten. Clearly, the exercise of subpoena power must be within "the rudimentary principles of justice." (*Federal Communications Commission v. Cohn,* 154 F. Supp. 899, 908 [S. D. N. Y. 1957].)

I would affirm the district court's injunction.

KAUL, J., joins in the foregoing dissent.