408 A.2d 851

**ROBAR DEVELOPMENT CORPORATION, Appellant at No. 1163,**

v.

**Al MINUTELLO and Louis Minutello, Appellants at No. 1144.**

Superior Court of Pennsylvania.

Argued April 9, 1979.

Filed Aug. 8, 1979.

Angelo C. Procopio, Pittsburgh, for appellants.

Maurice A. Nernberg, Pittsburgh, for appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

This is an appeal from an order of the Court of Common Pleas of Allegheny County granting appellee's exceptions to the trial court's disposition and entering verdict on appellee's claims.

Appellee (Plaintiff below) owner of a building located on William Penn Highway in Murrysville, Pennsylvania, leased those premises to "Mr. Beefe International, Inc. for a 15 year term commencing May 1, 1970. Mr. Beefe, in turn, licensed Minutello, Inc. (of which appellants are sole and equal shareholders) to operate a "Mr. Beefe" fast food restaurant on the premises. Minutello, Inc. also entered into an agreement with appellee whereby it would be in the position of subleasee and in the event "Mr. Beefe" went bankrupt, it would advance to position of prime tenant.

On August 12, 1971, Mr. Beefe was adjudicated bankrupt and pursuant to the above agreement, Minutello, Inc. advanced to the position of prime tenant and began making rental payments.

In May, 1972, however, appellants, apparently dissatisfied with the business, transferred in bulk all property connected with the restaurant to Leon and Frances K. White for $27,500.00.

In connection with this transfer, the rent was reduced to $1,000.00 a month by appellees; of which the Whites were obligated to pay $850.00, the remainder being absorbed by

Minutello, Inc. At that point, however, Minutello, Inc., having sold its equipment and sublet the building, was effectively out of business. The appellants, however, continued to make $150.00 a month rental payments to appellee, until late 1972, for the amount owed by Minutello, Inc. When the payments by appellants stopped, appellee filed suit and obtained judgment for the arrearages.

Minutello, Inc., however, had been rendered judgment-proof by the transfer of its assets to the Whites. The $27,500.00 in proceeds received from the Whites had been distributed. $5,000.00 went to various creditors; the remaining $22,500.00 was distributed to the appellants as a repayment for loans to Minutello, Inc. This was reflected on the out-of-existence affidavit filed by Minutello, Inc. in December, 1974.

This assumpsit action was initiated in July, 1975 by appellee, naming the shareholders of Minutello, Inc. as defendants (Al and Louis Minutello). The complaint in two counts alleged: (1) that appellees were induced by appellants misrepresentations to deal with Minutello, Inc. as a corporate entity instead of with appellants as individuals and; (2) that appellants were personally liable for the unexpired lease obligation, by virtue of their unauthorized distribution of the proceeds of the sale of the corporation's assets.

After a non-jury trial, verdict was entered in favor of appellants on both counts. Exceptions were heard by Court en banc. The court dismissed exceptions as to count I; reversed the trial court's decision as to count II; and entered a verdict for the appellee, with a remand for an evidentiary hearing to determine the amount of appellants liability.

After a review of the testimony and the record, we affirm the order of the lower court.

The crux of this dispute lies in the propriety of the distribution to appellants of the proceeds from the sale of all of the tangible personal property of the corporation.

■ The court below reasoned that since appellants were sole stockholders and officers in the corporation, this payment to themselves as creditors of their corporation, no matter how legitimate the debt, was in effect a preferential payment to themselves and was in contravention of their fiduciary duty to protect the interest of the other creditors.

We agree. Although technically when the distribution took place, no debts were owing, clearly appellant knew that the balance of the rental payments owed by the corporation to appellee could not be paid by the corporation. (Indeed, appellants for a period of 6 months individually paid the $150.00 a month rent). The corporation had no assets; the distribution had been, in effect, a "dissolution" of the corporation without adequate notice to creditors.

"[A] corporation could not dissolve and distribute its assets among its stockholders without its liquidating trustees retaining sufficient assets to provide for the corporate debts, including contingent claims and obligations under executory contracts." *Heaney v. Riddle*, 343 Pa. 456, 23 A.2d 456, 458 (1942).

We believe that this is a situation which requires us to "look behind the artificial personality, and, if need be, ignore it altogether, and deal with the individuals who constitute the corporation." *Shechter v. Shechter*, 366 Pa. 30, 76 A.2d 753 (1950).

■ Here on the day the corporation sold all its assets to the Whites; it obligated itself to pay $150.00 a month to the appellee until 1985. Appellants can hardly claim that no debts or obligations were present when they distributed the funds, received from the Whites, to themselves as creditors. They had a duty as corporate officers, to share ratably with the other creditors; and we are of the opinion that appellee stood in that position. *Asheville Lumber v. Hyde*, 172 F. 730 (1909).

■ In the related line of cases, where officers of insolvent corporations satisfied the corporate obligations held by themselves prior to other creditors, equity has erected a

presumption that such officers have taken unfair advantage of their special position and knowledge to save themselves from being prejudiced. The burden lies on the officers to show the circumstances which made it proper that they should be paid prior to the other creditors. *Hill v. Standard Telephone Manufacturing Company*, 198 Pa. 446, 48 A. 432 (1901); *Pangbarn v. American Vault, Safe & Lock Company*, 205 Pa. 63, 54 A. 504 (1903).

We are of the opinion that under the circumstances of this case, with appellants occupying directors positions, the burden was on them to demonstrate why they should be paid before other creditors, when the effect of the distribution was to render the corporation assetless.

The evidence adduced herein shows nothing to justify their distribution of all the corporate assets to themselves, where they were aware of the continuing corporate obligation to pay $150.00 a month rent to appellees.

We affirm the action of the court below and remand for an evidentiary hearing to determine the amount of appellants liability.